| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> BSD OS LLC, LUMINEX BK LLC, YITZHAK RAHMAN, TM OS LLC, VITAL CRAFT OS LLC, MARK PELTA, HARMONY OS LLC, ABRAHAM RADZIK, PINNACLE OS LLC, JOSEPH J. SCALA, WELLSPRING SOLUTIONS LLC, NEXGEN LINE INC., GIORA BENNISSIM (a.k.a. "ADAM BENNISSIM"), PLATINUM LINE INC., AND IGOR ABAYEV, <br><br> Defendants. | C.A. No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick, & Brink, P.C., allege as follows:

# I.   **INTRODUCTION**

1.     This case involves a scheme to defraud executed by a series of durable medical equipment ("DME") companies and their owners, including BSD OS LLC ("BSD OS"), Luminex BK LLC ("Luminex BK"), Yitzhak Rahman ("Rahman"), TM OS LLC ("TM OS"), Vital Craft OS LLC ("Vital Craft OS"), Mark Pelta ("Pelta"), Harmony OS LLC ("Harmony OS"), Abraham Radzik ("Radzik"), Pinnacle OS LLC ("Pinnacle OS"), Joseph J. Scala ("Scala"), Wellspring Solutions LLC ("Wellspring Solutions"), Nexgen Line Inc. ("Nexgen Line"), Giora Bennissim ("Bennissim" a.k.a. "Adam Bennissim"), Platinum Line Inc. ("Platinum Line"), and Igor Abayev ("Abayev") (collectively, the "Defendants"), who conspired to submit fraudulent No-Fault insurance charges for the provision of unlicensed and medically unnecessary DME items, including pneumatic compression devices ("PCDs"), transcutaneous electrical joint stimulation devices ("TEJSDs"), and osteogenesis stimulators, to Allstate claimants.

2.     The Defendants damaged Allstate by intentionally demanding and collecting payment on false insurance claims.

3.     BSD OS, Luminex BK, TM OS, Vital Craft OS, Harmony OS, Pinnacle OS, Wellspring Solutions, Nexgen Line, and Platinum Line (collectively, the "DME Entity Defendants") made material misrepresentations in their respective licensure applications to the Department of Consumer and Worker Protection ("DCWP") to dispense DME, rendering their licenses null and void.

4.     At all times relevant, the DME Entity Defendants were prohibited from seeking New York No-Fault claims as they failed to comply with state and local licensure laws.

5. Despite this prohibition, the Defendants dispensed DME to claimants as part of a fraudulent pre-determined treatment protocol that required prescriptions for all claimants regardless of medical need.

6. The Defendants knew that the DME billed to Allstate by the DME Entity Defendants was medically unnecessary, ineffective, and excessive.

7. In furtherance of this scheme, Rahman, Pelta, Radzik, Scala, Bennissim, and Abayev (collectively, the "DME Owner Defendants") secured a steady stream of prescriptions for DME through unlawful financial arrangements made between the DME Entity Defendants and John J. McGee, D.O. ("McGee") – their primary referrer – in violation of New York law.

8. Numerous DME prescriptions were generated by McGee and his employees at the clinics that specifically cater to No-Fault patients located at:

    i.    2115 Surf Avenue, Brooklyn, New York (Beach Medical Rehabilitation P.C.);

    ii.    2088 Flatbush Avenue, Brooklyn, New York (Beach Medical Rehabilitation P.C.);

    iii.    132 32nd Street, Suite 208, Brooklyn, New York (Beach Medical Rehabilitation P.C.);

    iv.    1552 Dahill Road, Brooklyn, New York (Beach Medical Rehabilitation P.C.);

    v.    1200 Waters Place, Suite 112, Bronx, New York (Beach Medical Rehabilitation P.C.);

    vi.    384 East 19th Street, Suite 504, Bronx, New York (Beach Medical Rehabilitation P.C.);

    vii.    1 Cross Island Plaza, Suite 323, Rosedale, New York (Beach Medical Rehabilitation P.C.);

    viii.    1975 Linden Boulevard, Suite 400, Elmont, New York (Beach Medical Rehabilitation P.C.);

    ix.    1339 East Gun Hill Road, Bronx New York (South Bronx Medical Rehabilitation P.C.);

    x.    6 Gramatan Avenue, Suite 401, Mount Vernon, New York (South Bronx Medical Rehabilitation P.C.);

    xi.    2558 Holland Avenue, Bronx, New York (South Bronx Medical Rehabilitation P.C.); and

    xii.    1100 Pelham Parkway, South Bronx, New York (South Bronx Medical Rehabilitation P.C.).

9.    Several of McGee's clinics have been implicated in fraud schemes in other actions filed in this District, including two (2) that involve the subject Defendants.[1]

10.    The vast majority of the prescriptions were unlawfully steered by McGee and/or his employees (e.g., Stanislav Leshchinskiy, N.P. ("Leshchinskiy"); Stella Amanze, N.P. ("Amanze"); Yledede Mimi Cummings, N.P. ("Cummings"); and Junie White, N.P. ("White")) (collectively referred to as the "Referring Providers") through his clinics—Beach Medical Rehabilitation P.C. ("Beach Medical Rehabilitation") and South Bronx Medical Rehabilitation P.C. ("South Bronx Medical Rehabilitation")—to the DME Entity Defendants to allow the Defendants to bill insurers, including Allstate.

---

[1] *See Liberty Mutual Ins. Co. et al v. BSD OS LLC et al.*, No. 1:25-cv-01889-FB-LKE (E.D.N.Y.); *Government Employees Ins. Co. et al. v. Harmony OS LLC et al.*, No. 1:25-cv-02702-JAM (E.D.N.Y.); *Allstate Ins. Co. v. Jeffrey S. Rauch, D.C. d/b/a Rego Park Healthcare Alliance*, No. 2:22-cv-02424-JMA-LGD (E.D.N.Y.); *Gov. Empls. Ins. Co., v. McGee, D.O.*, No. 1:23-cv-07753-PKC-PK (E.D.N.Y.); *Allstate Ins. Co., v. Ilyaich*, No. 1:13-cv-05464-NG-LB (E.D.N.Y.); *State Farm Mut. Auto. Ins. Co. v. McGee*, No. 1:10-cv-03848-PKC-RML (E.D.N.Y.); and *Gov't Empls. Ins. Co. v. Clearcare Medical Supplies Inc.,* No. 1:25-cv-03365-BMC (E.D.N.Y.).

11.     The Defendants enriched themselves at the expense of patients, as the scheme generated immense numbers of prescriptions for the DME Entity Defendants without regard for actual medical need.

12.     Overall, the DME Entity Defendants operated in violation of New York law by dispensing and billing for DME that were prescribed pursuant to unlawful referral arrangements, were medically unnecessary, and were dispensed without the requisite licenses.

13.     The Defendants' scheme was designed to exploit New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents.

14.     New York is an ideal venue for this scheme because every claimant is eligible for at least $50,000.00 in coverage for medical expenses under New York's No-Fault laws.

15.     The No-Fault system allows claimants to assign their benefits to medical providers, who may then seek payment directly from the claimant's insurer.

16.     However, medical providers are not eligible to collect No-Fault payments if they fail, in any respect, to comply with applicable licensing laws.

17.     The Defendants submitted fraudulent bills to Allstate seeking No-Fault payments for DME.

18.     The DME Entity Defendants' bills are fraudulent as the DME that was purportedly dispensed by the DME Entity Defendants was (1) provided to Allstate Claimants even though the DME Entity Defendants were not lawfully licensed; (2) provided pursuant to unlawful referral and financial arrangements, (3) excessive and medically unnecessary, (4) rendered as part of a predetermined treatment protocol, and/or (5) provided for the sole purpose of maximizing the DME Owner Defendants' profits rather than improving the condition of each patient.

19.     The DME Entity Defendants' misconduct violated applicable New York State and local licensing requirements and Allstate was damaged by the fraudulent No-Fault claims submitted by the Defendants.

20.     The success of the Defendants' scheme to defraud relied on the transmission to Allstate, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents warranting the DME Entity Defendants eligibility to collect No-Fault payments under New York law.

21.     The Defendants knew that the DME Entity Defendants were ineligible to collect No-Fault payments, yet they still created statutory claim forms (i.e., NF-3 bills), which falsely certified the DME Entity Defendants' eligibility to collect No-Fault payments under New York law.

22.     Allstate reasonably relied on the facial validity of the records and bills mailed by the DME Entity Defendants—and the representations contained therein—when making payments on the DME Entity Defendants' No-Fault claims.

23.     By this Complaint, Allstate brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

24.     This action seeks actual damages of more than $679,663.38, which represent No-Fault payments that Allstate was wrongfully induced to make to the DME Entity Defendants during the course of this scheme.

25.     Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to the DME Entity Defendants in connection with any No-Fault claims submitted to Allstate.

26.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

27.     The Defendants intentionally submitted bills to Allstate on behalf of the DME Entity Defendants knowing that none of the bills were lawfully compensable under prevailing New York law.

## II.     THE PARTIES

### A.     PLAINTIFFS

28.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal place of business in Northbrook, Illinois.

29.     At all relevant times to the allegations contained in this Complaint, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company were each authorized to conduct business in New York.

### B.     DEFENDANTS

#### 1.     BSD OS LLC

30.     BSD OS is organized as a limited liability corporation under New York law.

31.     BSD OS' principal place of business is located at 224 West 35th Street, Suite 587, New York, New York.

32.     According to the records on file with the New York Department of State, Rahman is the sole shareholder, officer, and/or director of BSD OS.

33. BSD OS and Rahman participated in the operation and management of the South Bronx Medical Rehabilitation enterprise during the relevant period.

34. BSD OS and Rahman involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

35. BSD OS billed for the provision of fraudulent DME in connection with Allstate claimants.

36. At all times relevant, BSD OS did not possess the requisite license required by the City of New York.

37. BSD OS' bills were fraudulent because they misrepresented material facts about the licensure of BSD OS.

38. BSD OS' bills were also fraudulent because the DME was not medically necessary.

39. Accordingly, BSD OS was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**2.  Luminex BK LLC**

40. Luminex BK is organized as a limited liability corporation under New York law.

41. Luminex BK's principal place of business is located at 118-35 Queens Boulevard, Suite 400, Forest Hills, New York.

42. According to the records on file with the New York Department of State, Rahman is the sole shareholder, officer, and/or director of Luminex BK.

43. Luminex BK and Rahman participated in the operation and management of the South Bronx Medical Rehabilitation enterprise during the relevant period.

44. Luminex BK and Rahman involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

45. Luminex BK billed for the provision of fraudulent DME in connection with Allstate claimants.

46. At all times relevant, Luminex BK did not possess the requisite license required by the City of New York.

47. Luminex BK's bills were fraudulent because they misrepresented material facts about the licensure of Luminex BK.

48. Luminex BK's bills were also fraudulent because the DME was not medically necessary.

49. Accordingly, Luminex BK was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 3. Yitzhak Rahman

50. Rahman resides in and is a citizen of the State of New York.

51. At all times relevant, Rahman has never been licensed to perform healthcare services in the State of New York.

52. According to the records on file with the New York Department of State, Rahman is the sole shareholder, officer, and/or director of BSD OS and Luminex BK.

53. Rahman participated in the operation and management of the South Bronx Medical Rehabilitation enterprise during the relevant period, and is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

### 4. TM OS LLC

54. TM OS is organized as a limited liability corporation under New York law.

55. TM OS' principal place of business is located at 67-04 Myrtle Avenue, Suite 1505, Glendale, New York.

56.     According to the records on file with the New York Department of State, Pelta is the sole shareholder, officer, and/or director of TM OS.

57.     TM OS and Pelta participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period.

58.     TM OS and Pelta involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

59.     TM OS billed for the provision of fraudulent DME in connection with Allstate claimants.

60.     At all times relevant, TM OS did not possess the requisite license required by the City of New York.

61.     TM OS' bills were fraudulent because they misrepresented material facts about the licensure of TM OS.

62.     TM OS' bills were also fraudulent because the DME was not medically necessary.

63.     Accordingly, TM OS was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**5.     Vital Craft OS LLC**

64.     Vital Craft OS is organized as a limited liability corporation under New York law.

65.     Vital Craft OS' principal place of business is located at 447 Broadway, Floor 2, New York, New York.

66.     According to the records on file with the New York Department of State, Pelta is the sole shareholder, officer, and/or director of Vital Craft OS.

67.     Vital Craft OS and Pelta participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period.

68.     Vital Craft OS and Pelta involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

69.     Vital Craft OS billed for the provision of fraudulent DME in connection with Allstate claimants.

70.     At all times relevant, Vital Craft OS did not possess the requisite license required by the City of New York.

71.     Vital Craft OS' bills were fraudulent because they misrepresented material facts about the licensure of Vital Craft OS.

72.     Vital Craft OS' bills were also fraudulent because the DME was not medically necessary.

73.     Accordingly, Vital Craft OS was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**6.      Mark Pelta**

74.     Pelta resides in and is a citizen of the State of New York.

75.     At all times relevant, Pelta has never been licensed to perform healthcare services in the State of New York.

76.     According to the records on file with the New York Department of State, Pelta is the sole shareholder, officer, and/or director of TM OS and Vital Craft OS.

77.     Pelta participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period, and

is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

### 7. Harmony OS LLC

78. Harmony OS is organized as a limited liability corporation under New York law.

79. Harmony OS' principal place of business is located at 442 Lorimer Street, Suite D, Brooklyn, New York.

80. According to the records on file with the New York Department of State, Radzik is the sole shareholder, officer, and/or director of Harmony OS.

81. Harmony OS and Radzik participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period.

82. Harmony OS and Radzik involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

83. Harmony OS billed for the provision of fraudulent DME in connection with Allstate claimants.

84. At all times relevant, Harmony OS did not possess the requisite license required by the City of New York.

85. Harmony OS' bills were fraudulent because they misrepresented material facts about the licensure of Harmony OS.

86. Harmony OS' bills were also fraudulent because the DME was not medically necessary.

87. Accordingly, Harmony OS was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 8. **Abraham Radzik**

88. Radzik resides in and is a citizen of the State of New York.

89. At all times relevant, Radzik has never been licensed to perform healthcare services in the State of New York.

90. According to the records on file with the New York Department of State, Radzik is the sole shareholder, officer, and/or director of Harmony OS.

91. Radzik participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period, and is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

### 9. **Pinnacle OS LLC**

92. Pinnacle OS is organized as a limited liability corporation under New York law.

93. Pinnacle OS' principal place of business is located at 1178 Broadway, 2nd Floor, New York, New York.

94. According to the records on file with the New York Department of State, Scala is the sole shareholder, officer, and/or director of Pinnacle OS.

95. Pinnacle OS and Scala participated in the operation and management of the Beach Medical Rehabilitation P.C. enterprise during the relevant period.

96. Pinnacle OS and Scala involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

97. Pinnacle OS billed for the provision of fraudulent DME in connection with Allstate claimants.

98.     At all times relevant, Pinnacle OS did not possess the requisite license required by the City of New York.

99.     Pinnacle OS' bills were fraudulent because they misrepresented material facts about the licensure of Pinnacle OS.

100.    Pinnacle OS' bills were also fraudulent because the DME was not medically necessary.

101.    Accordingly, Pinnacle OS was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 10.    Joseph J. Scala

102.    Scala resides in and is a citizen of the State of New York.

103.    At all times relevant, Scala has never been licensed to perform healthcare services in the State of New York.

104.    According to the records on file with the New York Department of State, Scala is the sole shareholder, officer, and/or director of Pinnacle OS.

105.    Scala participated in the operation and management of the Beach Medical Rehabilitation enterprise during the relevant period, and is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

### 11.    Wellspring Solutions LLC

106.    Wellspring Solutions is organized as a limited liability corporation under New York law.

107.    Wellspring Solutions' principal place of business is located at 276 Fifth Avenue, Suite 704, New York, New York.

108.     According to the records on file with the New York Department of State, Bennissim is the sole shareholder, officer, and/or director of Wellspring Solutions.

109.     Wellspring Solutions and Bennissim participated in the operation and management of the Beach Medical Rehabilitation enterprise during the relevant period.

110.     Wellspring Solutions and Bennissim involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

111.     Wellspring Solutions billed for the provision of fraudulent DME in connection with Allstate claimants.

112.     At all times relevant, Wellspring Solutions did not possess the requisite license required by the City of New York.

113.     Wellspring Solutions' bills were fraudulent because they misrepresented material facts about the licensure of Wellspring Solutions.

114.     Wellspring Solutions' bills were also fraudulent because the DME was not medically necessary.

115.     Accordingly, Wellspring Solutions was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**12.     Nexgen Line Inc.**

116.     Nexgen Line is organized as a corporation under New York law.

117.     Nexgen Line's principal place of business is located at 238 Wilson Avenue, Suite A, Brooklyn, New York.

118.     According to the records on file with the New York Department of State, Bennissim is the sole shareholder, officer, and/or director of Nexgen Line.

119.     Nexgen Line and Bennissim participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period.

120.     Nexgen Line and Bennissim involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

121.     Nexgen Line billed for the provision of fraudulent DME in connection with Allstate claimants.

122.     At all times relevant, Nexgen Line did not possess the requisite license required by the City of New York.

123.     Nexgen Line's bills were fraudulent because they misrepresented material facts about the licensure of Nexgen Line.

124.     Nexgen Line's bills were also fraudulent because the DME was not medically necessary.

125.     Accordingly, Nexgen Line was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**13.     Giora Bennissim (a.k.a. "Adam Bennissim")**

126.     Bennissim resides in and is a citizen of the State of New York.

127.     At all times relevant, Bennissim has never been licensed to perform healthcare services in the State of New York.

128.     According to the records on file with the New York Department of State, Bennissim is the sole shareholder, officer, and/or director of Wellspring Solutions and Nexgen Line.

129.     Bennissim participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period, and

is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

### 14. <u>Platinum Line Inc.</u>

130.   Platinum Line is organized as a corporation under New York law.

131.   Platinum Line's principal place of business is located at 17561 Hillside Avenue, Suite 202, Jamaica, New York.

132.   According to the records on file with the New York Department of State, Abayev is the sole shareholder, officer, and/or director of Platinum Line.

133.   Platinum Line and Abayev participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period.

134.   Platinum Line and Abayev involved McGee and his employees to make false and fraudulent referrals for DME in violation of New York law.

135.   Platinum Line billed for the provision of fraudulent DME in connection with Allstate claimants.

136.   At all times relevant, Platinum Line did not possess the requisite license required by the City of New York.

137.   Platinum Line's bills were fraudulent because they misrepresented material facts about the licensure of Platinum Line.

138.   Platinum Line's bills were also fraudulent because the DME was not medically necessary.

139.   Accordingly, Platinum Line was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

15. **Igor Abayev**

140. Abayev resides in and is a citizen of the State of New York.

141. At all times relevant, Abayev has never been licensed to perform healthcare services in the State of New York.

142. According to the records on file with the New York Department of State, Abayev is the sole shareholder, officer, and/or director of Platinum Line.

143. Abayev participated in the operation and management of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises during the relevant period, and is therefore responsible for the fraudulent DME billed in connection with the Allstate claimants at issue in this Complaint.

III. **JURISDICTION AND VENUE**

144. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

145. Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

146. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c) whereas the vast majority of the acts known to Allstate alleged herein were carried out within the Eastern District of New York.

147. The DME Entity Defendants conducted business in the State of New York by submitting bills under New York's No-Fault laws for DME items that were purportedly provided to patients who lived in New York or who were covered by New York automobile insurance policies issued by Allstate.

148. The Defendants have therefore engaged in purposeful activities in New York by

conducting business in New York.

149.     The Defendants have also engaged in purposeful activities in New York by causing the DME Entity Defendants to initiate arbitration proceedings in New York against Allstate.

150.     The Defendants used New York arbitrations and state court litigation to monetize their fraud against Allstate in such a way to essentially finance their fraudulent practices with proceeds paid by Allstate.

151.     The Defendants pattern of submitting and adjudicating baseless and repetitive claims have themselves helped to perpetuate their RICO violations.

152.     Specifically, the Defendants routinely commence frivolous New York arbitrations and/or state court litigation after Allstate denies their claims to fraudulently obtain No-Fault benefits that are used to finance the RICO scheme.

153.     The Defendants' activities in and contact with New York were purposely sought and transacted to take advantage of the benefits available under the No-Fault laws.

154.     The allegations and causes of action asserted herein arise from the Defendants' conduct within the State of New York and their purposeful availment of New York's No-Fault insurance system, and therefore there is no question that there exists a substantial relationship between the transactions at issue, and Allstate's causes of action.

155.     Overall, the fraudulent scheme alleged herein has many ties to the State of New York, and the ends of justice are best served through this Court's exercise of jurisdiction over the Defendants.

## IV.     APPLICABLE NO-FAULT LAWS AND LICENSING STATUTES

### A.     NEW YORK'S NO-FAULT LAWS—GENERAL PROVISIONS

156.     Allstate underwrites automobile insurance in the State of New York.

157.     New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents ("claimants") have an efficient mechanism to pay reasonable fees for necessary healthcare services.

158.     Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.), and the regulations promulgated pursuant thereto (11 NYCRR § 65, et seq.) (collectively, "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault benefits") to claimants.

159.     Under the New York No-Fault law, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of a motor vehicle.

160.     "Basic economic loss" is defined to include "all necessary expenses" for medical services. N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

161.     No-Fault benefits include up to $50,000.00 per Allstate claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

**B.     ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS**

162.     Medical providers are not eligible to collect payment under New York's No-Fault laws if they fail to meet ***any*** applicable New York State or local licensing requirements necessary to perform those services in New York.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

163.     An insurer may withhold No-Fault payments to a medical provider when there is a willful and material failure by the provider to abide by licensing and incorporation statutes.  *State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758 (N.Y. 2005); 11 N.Y.C.R.R. § 65-3.16(a)(12).

164.     Accordingly, if a professional healthcare service provider fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully

entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

165.    As alleged herein, the DME Entity Defendants failed to comply with several laws and regulations when providing healthcare services to claimants during the course of this scheme; therefore, the DME Entity Defendants are not—and never were—eligible to seek or collect No-Fault benefits from Allstate.

## C.    NEW YORK CITY DME LICENSURE REQUIREMENTS

166.    Section 20-425 of the New York City Administrative Code requires licensure of any New York City healthcare providers that dispense DME.

167.    Subchapter 25 of Title 20 of the New York City Administrative Code specifically requires DME dealers (including any business that involves selling, renting, repairing or adjusting DME) to obtain a Dealer in Products for the Disabled License from the New York City Department of Consumer and Worker Protection (hereinafter referred to as a "DCWP License").

168.    A DCWP License is required for all New York City DME dealers to lawfully provide DME to the disabled.[2]

169.    Section 20-426 of the New York City Administrative Code provides that it is "unlawful for any dealer to engage in the selling, renting, repairing, or servicing of, or making adjustments to, products for the disabled without a license."

170.    To obtain a DCWP license, a dealer must submit an application to the Commissioner of the Department of Consumer and Worker Protection that includes the identity of the applicant, the address of the DME dealer and other pertinent information concerning its officers and directors.

---

[2] "Disabled" means a person who has a physical or mental impairment resulting from anatomical or physiological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques. NYC Admin. Code §20-425.

171.    The application contains the following fraud warning:

**PENALTY FOR FALSE STATEMENTS:**

It is against the law to make a statement in this Application that you know is false. If you make a statement that you know is false, you may be punished.

Under Sections 210.45 and 175.30 of the New York Penal Law, you may be:
- fined up to $1000 and / or
- sent to jail for up to one year

Under Section 175.35 of the New York Penal Law, you may be punished if you:
- make a statement that you know is false and / or
- make the statement because you intend to mislead the Department of Consumer Affairs

Under Section 175.35 of the New York Penal Law, you may be:
- fined up to $5000 or
- fined an amount that is twice the amount of money you received by making the false statement and / or
- sent to jail for up to 4 years

The Department of Consumer Affairs may also punish you for making a false statement on this Application. These punishments may include:
- fines or penalties of up to $500 for each false statement
- permanent loss (revocation) of your license

172.    At no time were the DME Entity Defendants licensed by the DCWP to dispense DME and therefore ineligible for No-Fault reimbursement.

**D.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS**

173.    Claimants can assign their No-Fault benefits to third-parties.

174.    Under a duly executed assignment, a claimant's medical provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered.

175.    Medical providers can submit No-Fault claims by using the claim form required by the DOI (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 forms").

176.    NF-3 forms are important because they certify that the provider's request for payment is not materially false, misleading, or fraudulent. 11 N.Y.C.R.R. § 65.3-11(a); N.Y. Ins. Law § 403(d).

177.    Under New York law, medical providers must verify their NF-3 submissions subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime…

N.Y. Ins. Law § 403(d).

178.    Medical providers make material misrepresentations when they submit NF-3 forms that omit or misrepresent information about the provider's eligibility for payment under New York's No-Fault laws. These misrepresentations can take many forms, including false or misleading information about licensure and medical necessity.

179.    Therefore, the Defendants committed fraud by misrepresenting material facts about (a) the DME licensure, and (b) the medical necessity of the DME dispensed.

## V.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    THE ASSOCIATION BETWEEN THE DME ENTITY DEFENDANTS

180.    Although the DME Entity Defendants appear to be distinct legal entities owned by separate individuals, the hallmarks of their fraud scheme are interchangeable.

181.    The association between the DME Entity Defendants is supported by the fact that each of the DME Entity Defendants utilized the same telephone number (i.e., (914) 308-1671) on their respective delivery receipts, which were submitted to Allstate.

182.    True and accurate images from these delivery receipts depicting the address and telephone number for each of the DME Entity Defendants is contained below.

| DME Provider | Owner | Sample Delivery Receipt |
|---|---|---|
| BSD OS | Rahman | **BSD OS**<br>**224 W 35th St Ste 500 #587 New York, NY 10001**<br>Tel: (914) 308-1671<br><br>---<br><br>**DELIVERY RECEIPT** |
| TM OS | Pelta | **TM OS**<br>**67-04 Myrtle Ave Glendale, NY 11385**<br>Tel: (914) 308-1671<br><br>---<br><br>**DELIVERY RECEIPT** |
| Luminex BK | Rahman | **Luminex BK**<br>**118-35 Queens Blvd Tower, Suite 400, Queens, NY 11375**<br>Tel: (914) 308-1671<br><br>---<br><br>**DELIVERY RECEIPT** |
| Harmony OS | Radzik | **HARMONY OS**<br>**442 LORIMER ST, SUITE D BROOKLYN, NY 11206**<br>Tel: (914) 308-1671<br><br>---<br><br>**DELIVERY RECEIPT** |
| Vital Craft OS | Pelta | **Vital Craft OS**<br>**447 BROADWAY, FL 2**<br>**NEW YORK, NY, 10013, USA**<br>Tel: (914) 308-1671<br><br>---<br><br>**DELIVERY RECEIPT** |

| | | |
|---|---|---|
| Pinnacle OS | Scala | **PINNACLE OS**<br>1178 Broadway FL 2, New York, NY 10001, USA<br>Tel: (914) 308-1671<br><br>_____<br><br>**DELIVERY RECEIPT** |
| Wellspring Solutions | Bennissim | **WELLSPRING SOLUTIONS**<br>276 5th Avenue, Suite 704 New York, NY 10001<br>Tel: (914) 308-1671<br><br>_____<br><br>**DELIVERY RECEIPT** |
| Nexgen Line | Bennissim | **NEXGEN LINE**<br>238 WILSON AVE, STE A BROOKLYN, NY 11237<br>Tel: (914) 308-1671<br><br>_____<br><br>**DELIVERY RECEIPT** |
| Platinum Line | Abayev | **PLATINUM LINE**<br>17561 Hillside Avenue, Jamaica, NY 11432, STE 202<br>Tel: (914) 308-1671<br><br>_____<br><br>**DELIVERY RECEIPT** |

183.    The use of a single telephone number to operate and manage each of the DME Entity Defendants, which purport to be nine (9) separate and independent entities, would not be possible without the Defendants' active participation in the fraud scheme.

184.    In addition to sharing a single telephone number, the DME Entity Defendants each received medically unnecessary prescriptions for the fraudulent DME that was purportedly issued pursuant to the predetermined treatment protocol.

185. For example, although a single prescription would purportedly be issued by a Referring Provider for multiple DME items, the items would inevitably be divided between the DME Entity Defendants and other DME distributors.

186. In certain instances, claimants such as D.J. (Claim No. 0767975295) and as D.H. (Claim No. 0770595279), were purportedly provided with DME from as many as 18 to 20 separate DME providers, including the DME Entity Defendants, respectively.

187. As such, throughout this scheme (i) BSD OS, Luminex BK, Nexgen Line, and Platinum Line were responsible for distributing pneumatic compression devices; (ii) TM OS, Harmony OS, Vital Craft OS, and Wellspring Solutions were responsible for distributing transcutaneous electrical joint stimulation devices; and (iii) Pinnacle OS and Platinum Line were responsible for distributing osteogenesis stimulators.

188. By allocating referrals for DME items in this manner, each of the DME Entity Defendants were intentionally incorporated to bill insurers, including Allstate, nearly exclusively for one (1) or two (2) specific types of DME.

189. Accordingly, when a Referring Provider issued a prescription or referral for DME, (i) BSD OS, Luminex BK, Nexgen Line, and Platinum Line submitted bills to Allstate for pneumatic compression devices under the Healthcare Common Procedure Coding System ("HCPCS") code E0675; (ii) TM OS, Harmony OS, Vital Craft OS, and Wellspring Solutions submitted bills to Allstate for transcutaneous electrical joint stimulation devices under HCPCS code E0762; and (iii) Pinnacle OS and Platinum Line submitted bills to Allstate for osteogenesis stimulators under HCPCS code E0760.

190. Notably, in nearly half of the claims submitted to Allstate, Pinnacle Line submitted a secondary charge for osteogenic stimulators under the HCPCS code E0747.

191.     In an effort to conceal the Defendants' fraudulent scheme, the Referring Providers routed DME referrals directly to the DME Entity Defendants, who then billed insurers, including Allstate, for the specific types of fraudulent DME items.

192.     This process not only removed claimants from the decision making process, but also limited the amount of billing that any one DME company, including the DME Entity Defendants, could submit.

193.     To further conceal the nature of this scheme, the DME Entity Defendants operated for short periods in sequential order to limit the amount of billing for each of the DME Entity Defendants.

194.     For example, the DME Entity Defendants operated in the following sequential manner:

    i.    BSD OS submitted DME billing to Allstate between June 29, 2023 and November 1, 2023;

    ii.    TM OS submitted DME billing to Allstate between September 19, 2023 and January 26, 2024;

    iii.    Luminex BK submitted DME billing to Allstate between November 8, 2023 and April 8, 2024;

    iv.    Vital Craft OS submitted DME billing to Allstate between February 1, 2024 and August 10, 2024;

    v.    Wellspring Solutions submitted DME billing to Allstate between April 29, 2024 and August 10, 2024;

    vi.    Nexgen Line submitted DME billing to Allstate between August 15, 2024 and November 5, 2024;

    vii.    Pinnacle OS submitted DME billing to Allstate between August 15, 2024 and January 11, 2025;

    viii.    Harmony OS submitted DME billing to Allstate between August 17, 2024 and February 20, 2025; and

ix.    Platinum Line submitted DME billing to Allstate between October 3, 2024 and March 29, 2025.

195.    Although each entity was incorporated in either 2023 or 2024, Rahman, Pelta, Radzik, Scala, and Bennissim allowed BSD OS, TM OS, Luminex BK, Harmony OS, Vital Craft, Pinnacle OS, Wellspring Solutions, and Nexgen Line to cease operating after less than two (2) years.

196.    Notably, in each instance, the DME Owners allowed their respective DCWP licenses to expire on March 15, 2025, with the exception of Platinum Line.

**B.    OVERVIEW OF THE DEFENDANTS' SCHEME TO DEFRAUD ALLSTATE**

197.    The Defendants conceived and implemented this complex fraud scheme in order to use the DME Entity Defendants as vehicles to bill Allstate and other insures in the State of New York for millions of dollars of No-Fault benefits, which the Defendants were never entitled to receive.

198.    As documented above, to maximize the amount of No-Fault benefits that the Defendants could receive, the DME Owner Defendants used the DME Entity Defendants in sequential fashion, wherein each DME Provider Defendant dispensed and billed almost exclusively for one (1) or two (2) specific DME items.

199.    In order to perpetrate this scheme, the Defendants obtained prescriptions for the fraudulent DME items that were purportedly issued by the Referring Providers.

200.    Notably, the Defendants (i) did not market or advertise the DME Entity Defendants to the general public; (ii) lacked any genuine retail or office locations; and (iii) operated without any legitimate efforts to obtain patients that might require DME or healthcare providers that might legitimately prescribe DME.

201.     Rather, and upon information and belief, the Defendants entered into illegal financial relationships with the Referring Providers, who then prescribed large volumes of the same prescriptions (or purported prescriptions) to the DME Entity Defendants for the specifically selected fraudulent DME items.

202.     In many instances, the purported prescriptions were forged documents that contained a duplicated or stamped signature from the Referring Provider.

203.     In furtherance of this scheme, and to further increase the amount of money that the Defendants could obtain from Allstate, the Referring Providers frequently issued prescriptions for items that were generic and vague.

204.     For example, the Referring Providers issued (or purportedly issued) generic prescriptions for pneumatic compression devices, which in turn allowed the DME Owner Defendants to unlawfully choose which variation of the device that could be provided to the Allstate claimants.

205.     As a result, in virtually every circumstance, the Defendants purported to provide Allstate's claimants with devices that had high reimbursement rates under the applicable fee schedule.

206.     In connection with the dispensing of these devices, the Defendants submitted bills to Allstate seeking reimbursement for the fraudulent pneumatic compression devices while utilizing HCPCS codes that were not directly identified in the Referring Provider's prescription.

207.     Specifically, Nexgen Line, Wellspring Solutions, Luminex BK, Platinum Line, and BSD OS billed Allstate for the fraudulent pneumatic compression devices using HCPCS code E0675, which represented that these entities provided Allstate claimants with pneumatic

compression devices described as "high pressure, rapid inflation/deflation cycle, for arterial insufficiency (unilateral and bilateral system)".

208.    Per the Centers for Medicare & Medicaid Services ("CMS") coding guidelines, this specific pneumatic compression device is used in the treatment of arterial insufficiency, which is for patients that have peripheral artery disease.

209.    By billing Allstate for pneumatic compression devices under the HCPCS code E0675, these entities represented that the Allstate claimants suffered from peripheral artery disease and thus required this specific pneumatic compression device to treat arterial insufficiency.

210.    The corresponding patient records, however, do not indicate that the claimants that purportedly received these pneumatic compression devices were suffering from arterial insufficiency or peripheral artery disease.

211.    Accordingly, after the Defendants obtained the vague and generic prescriptions for the fraudulent DME, the Defendants billed Allstate through each of the DME Entity Defendants for (i) fraudulent DME that was not reasonable nor medically necessary; (ii) fraudulent DME that was not based on valid prescriptions from licensed healthcare providers; and (iii) fraudulent DME that was otherwise not reimbursable.

212.    In certain instances, the DME Entity Defendants included assignment of benefit forms that were executed in the name of a separate entity, calling into question as to whether the DME Provider Defendant had a valid assignment to permit them to seek reimbursement from Allstate.

213.    For example, on August 31, 2024, Nexgen Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, R.A. (Claim No. 0755184090), on August 22, 2024.

214. The corresponding Assignment of Benefits form and Delivery Receipt, however, were submitted under Wellspring Solutions' name and letterhead.

215. Notably, the prescription for this DME was purportedly ordered by Leshchinskiy on May 16, 2024, which predates Nexgen Line's incorporation on or about July 30, 2024.

216. On January 10, 2025, Platinum Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, A.R. (Claim No. 0752565895), on December 23, 2024.

217. The corresponding Assignment of Benefits form and Delivery Receipt, however, were submitted under Nexgen Line's name and letterhead.

218. Notably, the prescription for this DME was purportedly ordered by Leshchinskiy on April 23, 2024, which predates Platinum Line's incorporation on or about September 5, 2024.

219. On January 8, 2025, Platinum Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, S.M. (Claim No. 0775832157), on December 12, 2024.

220. The corresponding Assignment of Benefits form and Delivery Receipt, however, were submitted under Nexgen Line's name and letterhead.

221. On January 8, 2025, Platinum Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, L.A. (Claim No. 0772637815), on December 20, 2024.

222. The corresponding Assignment of Benefits form and Delivery Receipt, however, were submitted under Nexgen Line's name and letterhead.

223. On January 8, 2025, Platinum Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, T.A. (Claim No. 0775584378), on December 18, 2024.

224. The corresponding Assignment of Benefits form and Delivery Receipt, however, were submitted under Nexgen Line's name and letterhead.

225. On January 9, 2025, Platinum Line submitted a medical bill to Allstate for a pneumatic compression device that was purportedly provided to the patient, K.C. (Claim No. 0773441968), on December 6, 2024.

226. The corresponding Delivery Receipt, however, was submitted under Nexgen Line's name and letterhead.

227. Further, the Assignment of Benefits form indicates that the claim was assigned to Nexgen Line, but identifies Platinum Line as the provider.

228. Moreover, the Assignment of Benefits form and Delivery Receipt submitted under Nexgen Line's name and letterhead appear to have a pre-printed "11/16/2024" date on each form that was re-dated to "12/06/2024" prior to submission.

229. True and accurate copies of the aforementioned Assignment of Benefits form and Delivery Receipt are depicted below.

**NEW YORK MOTOR VEHICLE NO-FAULT INSURANCE LAW**
**ASSIGNMENT OF BENEFITS FORM**

(FOR ACCIDENTS OCCURRING ON AND AFTER 3/1/02)

I, ___K███ C███___ , ("Assignor") hereby assign to ___NEXGEN LINE___ , ("Assignee")
(Print patient's name) (Print hospital or health care provider name)
all rights privileges and remedies to payment for health care services provided by assignee to which I am entitled under Article
51 (the No-Fault statute) of the Insurance Law.

The Assignee hereby certifies that they have not received any payment from or on behalf of the Assignor and shall not pursue
payment directly from the Assignor for services provided by said Assignee for injuries sustained due to the motor vehicle
accident which occurred on ___10/18/2024___ , not withstanding any other agreement to the contrary.
(Print accident date)
This agreement may be revoked by the assignee when benefits are not payable based upon the assignor's lack of coverage
and/or violation of a policy condition due to the actions or conduct of the assignor.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN
APPLICATION FOR COMMERCIAL INSURANCE OR A STATEMENT OF CLAIM FOR ANY COMMERCIAL OR PERSONAL INSURANCE
BENEFITS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION
CONCERNING ANY FACT MATERIAL THERETO, AND ANY PERSON WHO,IN CONNECTION WITH SUCH APPLICATION OR CLAIM,
KNOWINGLY MAKES OR KNOWINGLY ASSISTS, ABETS, SOLICITS OR CONSPIRES WITH ANOTHER TO MAKE A FALSE REPORT OF THE
THEFT, DESTRUCTION, DAMAGE OR CONVERSION OF ANY MOTOR VEHICLE TO A LAW ENFORCEMENT AGENCY, THE DEPARTMENT
OF MOTOR VEHICLES OR AN INSURANCE COMPANY, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL
ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE VALUE OF THE SUBJECT MOTOR VEHICLE
OR STATED CLAIM FOR EACH VIOLATION.

K███ C███
_____            _____
(Print name of Patient)                   (Signature of Patient)

                                          12/06/2024
_____            _____
PLATINUM LINE                             (Date of signature)

_____
(Address of Patient)

PLATINUM LINE                             _____
_____            (Signature of Provider)
(Print name of Provider)

                                          12/06/2024
                                          _____
                                          (Date of signature)

17561 Hillside Avenue, Jamaica, NY 11432,
STE 202
_____
(Address of Provider)

NYS FORM NF-AOB (Rev 1/2004)



**Phone: (914) 308-1671**

**NEXGEN LINE**
**238 WILSON AVE, STE A BROOKLYN, NY 11237**
Tel: (914) 308-1671

**DELIVERY RECEIPT**

Patient Name: K▇▇▇ C▇▇▇▇
Address:
Phone:

| Quantity | Item |
|---|---|
| 1 | PNEUMATIC COMPRESSION DEVICE |

I have received the equipment and medications listed above along with instructions on how to use it.
I indicate that NEXGEN LINE cannot be held responsible for any
inappropriate use of this equipment or medications.

Signature:

Date: 12/06/2024
11/16/2024

230.     As such, although the DME Entity Defendants appear to be distinct legal entities owned by separate individuals, it is clear that the entities acted interchangeably in furtherance of their fraud scheme.

### C.     UNLICENSED PROVISION OF DME

231.     At all times relevant, BSD OS, Luminex BK, TM OS, Vital Craft OS, Harmony OS, Pinnacle OS, Wellspring Solutions, Nexgen Line, and Platinum Line did not possess the necessary DME licensure required to bill No-Fault insures, including Allstate.

232.     New York City's Administrative Code requires that DME orthopedic device suppliers obtain DCWP Licensure. *See* NYC Admin. Code § 20-425; 6 RCNY § 2-271.

233.    To obtain a DCWP license, a dealer must submit an application to the Commissioner of the Department of Consumer and Worker Protection that includes the identity of the applicant, the name of the business, the operating address of the business, the primary telephone number, and other pertinent information concerning the entity's officers and directors.

234.    The application contains the following affirmation and false statement warning:

**PART 5: AFFIRMATION AND SIGNATURE – All applicants**

I am authorized (e.g., owner, sole proprietor, general partner, director, corporate officer, member, or shareholder owning 10% or more of the business) to complete and submit this application and all attachments (together, the "Application").

I have reviewed the entire Application.

If any of the information in this Application changes while the Application is pending or during the license term, the applicant must inform the Department of Consumer and Worker Protection (DCWP) of those changes within 10 days of the change. I also understand that the applicant must comply with all relevant laws and rules if granted a license to operate.

I understand that DCWP has not yet considered this Application and that operating before receiving a license or written permission from DCWP to operate is illegal.

**PENALTY FOR FALSE STATEMENTS**: Making a false statement or submitting fraudulent materials may be punishable by fine, imprisonment, or both, and also may result in the denial of your application or revocation of your license.

Under Section 175.35 of the New York Penal Law, you may be:
- fined up to $5000 or
- fined an amount that is twice the amount of money you received by making the false statement and/or
- sent to jail for up to 4 years

Punishment may also include but not be limited to fines or penalties of up to $500 for each false statement.
If DCWP denies your license application due to false statements and/or falsified documents, DCWP may prohibit you from submitting another license application for the same license category for one year.

By signing below, I understand and agree that I am swearing or affirming that I have told the truth on this Application.

235.    Despite the false statement warning, the DME Owner Defendants each knowingly provided false information in their applications relating to the operating addresses for each of the DME Entity Defendants.

236.     At all times relevant, the DME Owner Defendants have falsely identified their operating addresses.

237.     BSD OS falsely affirmed that its operating address was 224 West 35th Street, Suite 587, New York, New York.

238.     This address, however, is the location of the "Offices at Penn Place", with no record of BSD OS' operation from this location.

239.     TM OS falsely affirmed that its operating address was 6704 Myrtle Avenue, Suite 1505, Brooklyn, New York.

240.     This address, however, is the location of "Qwik Pack & Ship of Queens".

241.     Luminex BK falsely affirmed that its operating address was 118-35 Queens Boulevard, Suite 400, Forest Hills, New York.

242.     This address, however, is the location of "Regus Forest Hills Tower-Queens", where Suite 400 provides shared "coworking" offices and virtual office plans.

243.     Harmony OS falsely affirmed that its operating address was 442 Lorimer Street, Suite D, Brooklyn, New York.

244.     This address, however, is an "Office 11206" location, which provides packing, shipping, and printing services.

245.     Vital Craft OS falsely affirmed that its operating address was 477 Broadway, Floor 2, New York, New York.

246.     This address, however, is the location of "The Farm Soho", which offers virtual and short-term office and conference room rentals.

247.     Pinnacle OS falsely affirmed that its operating address was 1178 Broadway, Floor 2, New York, New York.

248. This address, however, is the location of "The Farm Nomad", which offers virtual and short-term office and conference room rentals.

249. Wellspring Solutions falsely affirmed that its operating address was 276 55th Avenue, Room 704, New York, New York.

250. This address, however, is the location of "Safe Workspace", which provides shared offices and virtual office plans.

251. Nexgen Line falsely affirmed that its operating address was 238 Wilson Avenue, Suite A, Brooklyn, New York.

252. This address, however, is the location of "Post Net", which provides printing, design, and shipping services.

253. Platinum Line falsely affirmed that its operating address is 175-61 Hillside Avenue, Suite 202, Jamaica, New York.

254. This address, however, is the location of "NexDoor", which offer room rentals, virtual mail receiving, and printing services.

255. Likewise, in each application, the DME Owner Defendants provided false information in their applications relating to the primary telephone number for each of the DME Entity Defendants.

256. BSD OS falsely affirmed that its primary telephone number was (646) 377-4737.

257. TM OS falsely affirmed that its primary telephone number was (917) 574-1252.

258. Luminex BK falsely affirmed that its primary telephone number was (646) 377-4737.

259. Harmony OS falsely affirmed that its primary telephone number was (845) 893-9699.

260. Vital Craft OS falsely affirmed that its primary telephone number was (917) 574-1252.

261. Pinnacle OS falsely affirmed that its primary telephone number was (929) 453-3446.

262. Wellspring Solutions falsely affirmed that its primary telephone number was (917) 609-1146.

263. Nexgen Line falsely affirmed that its primary telephone number was (917) 609-1146.

264. Platinum Line falsely affirmed that its primary telephone number is (917) 497-9559.

265. In many instances, the telephone numbers listed in the DCWP license applications appear to have no connection to either the owner or the actual entity.

266. As documented above, the DME Entity Defendants each utilized the same telephone number (i.e., (914) 308-1671), which was clearly displayed on each of the DME Entity Defendants' DME delivery receipts.

267. Based on this evidence, it is clear that the DME Owner Defendants provided false information regarding their business addresses and telephone numbers to conceal their association and to induce the DCWP to issue licenses to them, which gave the DME Entity Defendants the appearance of separate and distinct legitimate businesses.

268. Moreover, the DCWP licenses allowed the DME Entity Defendants the opportunity to submit fraudulent billing to insurers in the State of New York, including Allstate.

269.     At all times relevant, the Defendants failed to comply with all significant statutory and regulatory requirements by operating as DME suppliers within the City of New York without valid DCWP licenses.

270.     A DME supplier that does not possess the DCWP Licensure is not lawfully permitted to provide supplies to patients located in New York City.

271.     Allstate was thus induced to pay DME Entity Defendants for unlicensed services in violation of New York Law.

272.     Accordingly, the DME Entity Defendants unlawfully dispensed DME in New York and were not eligible to submit No-Fault claims to Allstate whereas they were in violation of state and local licensure law.

D.     **THE DEFENDANTS' UNLAWFUL REFERRAL RELATIONSHIP WITH MCGEE**

273.     The Defendants' scheme to defraud required a high volume of facially valid prescriptions to permit the DME Entity Defendants to submit charges for DME.

274.     To maintain a steady flow of prescriptions or referrals for the fraudulent DME, the Defendants colluded with McGee, who specializes in No-Fault and had large available patient bases for the Defendants to take advantage of.

275.     McGee and/or his employees generated prescriptions for DME in accordance with the Defendants' pre-determined treatment protocol, regardless of whether the patients needed, or even wanted, the DME items.

276.     Upon information and belief, the Defendants paid kickbacks or other incentives to McGee and/or his employees in exchange for these unlawful prescriptions in violation of New York law.

277. McGee and/or his employees funneled these prescriptions to the DME Entity Defendants, who in turn delivered the DME items to Allstate claimants.

278. In doing so, McGee and the DME Entity Defendants dictated what DME items were dispensed to each claimant, thereby preventing the claimant from declining the DME at the time of the evaluation or selecting where the prescribed DME should be dispensed.

279. These unlawful referral relationships were crucial to the success of the Defendants' scheme to defraud and resulted in false and fraudulent charges for medically unnecessary and expensive DME items, including the PCDs, TEJSDs, and osteogenesis stimulators.

### 1. McGee's History of Fraudulent Activity

280. McGee has a history of being accused of engaging in fraudulent activity under New York's No-Fault laws, including two (2) prior lawsuits involving the subject Defendants.

281. In *Liberty Mutual Ins. Co. et al v. BSD OS LLC et al.*, No. 1:25-cv-01889-FB-LKE (E.D.N.Y.), Liberty Mutual sued BSD OS, Luminex BK, Rahman, Wellspring Solutions, Nexgen Line, Bennissim, TM OS, Vital Craft OS, and Pelta, alleging that these defendants engaged in a comprehensive scheme to defraud for billing for unlicensed DME dispensed pursuant to unlawful prescriptions that were obtained by referring providers that included McGree and his employees.

282. Likewise, in *Government Employees Ins. Co. et al. v. Harmony OS LLC et al.*, No. 1:25-cv-02702-JAM (E.D.N.Y.), GEICO sued nine (9) DME providers and their respective owners, wherein the defendants were alleged to have engaged in a similar comprehensive scheme to defraud for billing for unlicensed DME dispensed pursuant to unlawful prescriptions that were obtained by referring providers that included McGree and his employees.

283. Prior to his involvement with DME companies, medical providers allegedly relied upon McGee, among others, and his entity, Yellowstone Medical Rehabilitation P.C., to provide

bogus referrals for computerized range of motion testing and muscle testing to further a conspiracy to defraud insurers. *See Allstate Ins. Co. v. Jeffrey S. Rauch, D.C. d/b/a Rego Park Healthcare Alliance*, No. 2:22-cv-02424-JMA-LGD (E.D.N.Y.).

284.　In exchange for these bogus referrals, it is alleged that McGee would receive a kickback/portion of the fraudulent proceeds from the No-Fault payments. *Id*.

285.　In furtherance of the conspiracy to defraud, it is alleged that McGee would manually perform the same testing that the claimants were being referred for. *Id*.

286.　The computerized range of motion testing and muscle testing that McGee made referrals for was allegedly never incorporated into the treatment plans by McGee. *Id*.　McGee would allegedly offer identical treatment to each claimant regardless of their complaints, injuries, or want. *Id*.

287.　The *Rauch* lawsuit further alleges that McGee would submit identical letters of medical necessity to support the fraudulent treatment being referred. *Id*.

288.　McGee and his entity, Integrated Medical Rehabilitation and Diagnostics P.C., allegedly submitted hundreds of fraudulent charges to insurers for excessive and medically useless services in exchange for engaging in an illegal referral and kickbacks scheme. *See Gov't Empls. Ins. Co. v. McGee, D.O.*, No. 1:23-cv-07753-PKC-PK (E.D.N.Y.).

289.　McGee allegedly engaged in an illegal referral and kickback scheme to provide a steady stream of patients to his entity. *Id*.

290.　These kickbacks were allegedly performed to provide a client base for McGee and to fraudulently profit from the treatment performed. *Id*.

291.　Allegedly, McGee performed the same series of treatments on each claimant at issue as part of a pre-determined fraudulent treatment protocol. *Id*.

292.     McGee allegedly participated in a scheme to defraud insurers wherein he submitted fraudulent bills for treatment through the creation of illegally owned, incorporated, and licensed professional corporations, including the entities Queens-Brooklyn Medical Rehabilitation, P.C., Queens Brooklyn Jewish Medical Rehabilitation P.C., Queens-Roosevelt Medical Rehabilitation P.C., Woodward Medical Rehabilitation P.C., Advanced Medical Rehabilitation P.C., Integrated Medical Rehabilitation and Diagnostics P.C., Yellowstone Medical Rehabilitation P.C., and Beach Medical Rehabilitation P.C. *See Allstate Ins. Co. v. Ilyaich*, No. 1:13-cv-05464-NG-LB (E.D.N.Y.).

293.     It is alleged in the *Ilyaich* lawsuit that McGee engaged in fraudulent practices by creating illegally owned and fraudulently incorporated professional corporations that were used to submit fraudulent bills to insurance companies. *Id*.

294.     In exchange for these fraudulent practices, McGee allegedly received a portion of the proceeds and profits from the individuals in control of his entities. *Id*.

295.     Similarly, patients were allegedly referred for medically unnecessary therapy and diagnostic tests by McGee and his fraudulently incorporated entities, Advanced Medical Rehabilitation, P.C., Integrated Medical Rehabilitation and Diagnostics, P.C., Yellowstone Medical Rehabilitation, P.C., Queens-Brooklyn Medical Rehabilitation P.C., and Queens-Brooklyn Jewish Medical Rehabilitation, P.C. *See State Farm Mut. Auto. Ins. Co. v. McGee*, No. 1:10-cv-03848-PKC-RML (E.D.N.Y.).

296.     It is alleged in the *McGee* lawsuit that McGee falsely represented in corporate documents that he was the owner of the named clinics and, instead, that these clinics were secretly owned and controlled by others. *Id*.

297.     McGee allegedly engaged in a pre-determined treatment protocol to perform

medically unnecessary tests and services in collaboration with those secretly in control of his clinics. *Id*.

298.    McGee allegedly prescribed medically unnecessary drugs through his clinic—Beach Medical Rehabilitation—to be dispensed by Fresh Meadow Pharmacy Inc., Town Rx Inc, and Siki's Pharmacy Inc. *See LM Gen. Ins. Co. v. Fresh Meadow Pharmacy Inc.*, No. 1:24-cv-05373-OEM-VMS (E.D.N.Y.).

299.    It is alleged that McGee prescribed nearly identical medication for the claimants at issue. *Id*.

300.    McGee was the primary source of referrals for the defendants in *Fresh Meadow* as part of their scheme. *Id*.

301.    Likewise, McGee and his employees, including Leshchinskiy and Cummings, allegedly prescribed medically unnecessary DME that was provided and billed for through Clearcare Medical Supplies Inc.  *See Gov't Empls. Ins. Co. v. Clearcare Medical Supplies Inc.*, No. 1:25-cv-03365-BMC (E.D.N.Y.).

302.    It is alleged that these prescriptions, which were often duplicated or photocopied, were issued as a result of an unlawful financial arrangement between McGee and Andrii Yashnohor, the owner of Clearcare Medical Supplies Inc. *Id*.

303.    McGee and his employees were the primary source of the DME referrals for the defendants in *Clearcare Medical* as part of their scheme.  *Id*.

E.    **THE DME REFERRALS OBTAINED PURSUANT TO PREDETERMINED TREATMENT PROTOCOLS**

304.     In addition to the Defendants' unlawful financial arrangements with McGee and his employees, the Defendants obtained prescriptions for the fraudulent DME pursuant to predetermined treatment protocols, which were designed to maximize the billing that the

Defendants – and others – could submit to insurance companies, including Allstate, rather than to treat or otherwise benefit their patients.

305. In nearly every instance, Allstate claimants that treated with the Referring Providers at Beach Medical Rehabilitation and South Bronx Medical Rehabilitation were subject to similar treatment, including identical prescriptions for the fraudulent DME.

306. The prescriptions for the fraudulent DME that were purportedly issued to the Allstate claimants were issued pursuant to predetermined treatment protocols set forth at each clinic, and not because the DME was medically necessary.

307. For example, virtually every claimant was prescribed a pneumatic compression device ("PCD") after relatively low-speed and low-impact motor vehicle accidents.

308. In a legitimate setting, this type of device would be provided only after appropriate consideration for a specific, documented, and corelated condition, as a PCD is used to stimulate muscle action in the extremities to encourage blood circulation to prevent the formation of blood clots in veins and arteries (i.e., "deep vein thrombosis" or "DVT").

309. In a legitimate setting, there are limited instances in which PCDs would be medically necessary, including major surgical procedures where the patient is immobilized or is otherwise at risk of DVT.

310. Similarly, virtually every claimant was prescribed transcutaneous electrical joint stimulation devices ("TEJSDs"), which are non-invasive devices that deliver electrical stimulation to reduce pain levels and symptoms that are associated with arthritis and other joint problems.

311. Unlike traditional transcutaneous electrical nerve stimulation ("TENS") units, which are intended to stimulate nerves in order to mask the sensation of pain, TEJSDs are intended to affect the bone and connective tissue to stimulate the repair of arthritic joint damage.

312. However, in confirming the use of the predetermined treatment protocol, the Allstate claimants' corresponding medical records from Beach Medical Rehabilitation and South Bronx Medical Rehabilitation failed to document that the PCDs and TEJSDs were prescribed to prevent DVT and to treat arthritic joint pain, respectively.

313. Similarly, in furtherance of this scheme, the Referring Providers prescribed osteogenesis stimulators, which were purportedly dispensed by Pinnacle OS and Platinum Line.

314. Osteogenesis stimulators are devices that apply electric current or ultrasound to the spine or a long bone (e.g., the femur) when a fusion or fracture failed to heal, or after a multilevel spinal fusion.

315. The CMS has published guidance stating that osteogenesis stimulators billed under E0747 and E0760 are covered only when there is evidence of a fracture where healing has ceased for three (3) or more months.

316. In a legitimate setting, osteogenesis simulators are not utilized to provide treatment to typical motor vehicle accident patients.

317. Moreover, there is no scientific evidence that bone stimulators, like the osteogenesis stimulators purportedly provided by Pinnacle OS and Platinum Line, help to treat patients with musculoskeletal injuries.

318. These devices, however, were utilized by the Defendants, as the items could be acquired at a low cost, and subsequently billed to Allstate at rates between $2,700.00 (under HCPCS code E0760) and $3,300.00 (under HCPCS code E0747).

319. As evidenced by the medical documentation that has been submitted to Allstate, virtually every claimant was prescribed the same DME pursuant to the predetermined treatment

protocol by the Referring Providers at Beach Medical Rehabilitation and South Bronx Medical Rehabilitation.

320.     In a legitimate setting, the patient's course of treatment would be determined after reviewing the patient's subjective complaints and upon the completion of an evaluation. In support of this course of treatment, the physician may, but generally does not, prescribe DME that might assist in the treatment of the patient's symptoms.

321.     In determining whether to prescribe DME to a patient, the physician would be required to evaluated multiple factors, including (i) whether the specific DME is likely to improve the patient's symptoms; (ii) whether the specific DME could have any negative effects based on the patient's current physical condition and prior medical history; and (iii) whether the patient is likely the use the DME is prescribed.

322.     Moreover, the patient's age, height, weight, physical condition, location within the vehicle, and location of the impact would affect not only the patient's injuries but also whether DME would be appropriate.

323.     As such, it is medically impossible for every Allstate claimant to receive nearly identical prescriptions for DME while treating at Beach Medical Rehabilitation and South Bronx Medical Rehabilitation.

324.     Rather, these nearly identical prescriptions indicate that the DME referrals were based on predetermined treatment protocols rather than the individual patient's complaints and symptoms.

325.     The medical records from Beach Medical Rehabilitation and South Bronx Medical Rehabilitation provide further evidence of the predetermined treatment protocol, wherein the Referring Providers utilized checkmark based prescriptions to prescribe DME.

326.     In many cases, multiple DME items were selected when there was no legitimate nor documented reason for their selection.

327.     In other instances, the Referring Providers utilized multiple prescriptions that included a single checkmark, which allowed the DME Entity Defendants to divide and bill for the prescribed DME items.

328.     In furtherance of this scheme, many of the prescriptions that were purportedly issued by the Referring Providers contained photocopied, forged, or stamped signatures.

329.     For example, prescriptions that were purportedly ordered by McGee have included two (2) photocopied, forged, or stamped signatures.

330.     When McGee purportedly prescribed DME consisting of a (i) pneumatic compression device; (ii) wearable PEMF device; and (iii) transcutaneous electric joint stimulation device, the orders have included the same signature.

331.     A true and accurate image of the January 5, 2024, DME prescription for the claimant L.A. (Claim No. 0772637815) is depicted below:



332.     A true and accurate image of the February 1, 2024, DME prescription for the claimant M.V. (Claim No. 0743797101) is depicted below:

Physician's Signature _____ Date: 2/1/24

333.    A true and accurate image of the November 19, 2024, DME prescription for the claimant S.M. (Claim No. 0775832157) is depicted below:



Physician's Signature _____ Date: 11/19/24

334.    When McGee purportedly prescribed DME consisting of more than six (6) items, the same photocopied, forged, or stamped signature was included on the orders.

335.    A true and accurate image of the February 26, 2024, DME prescription for the claimant M.A. (Claim No. 0763951282) is depicted below:



Physician's Signature _____ Date: 07/26/24

336.    A true and accurate image of the January 21, 2025, DME prescription for the claimant H.M. (Claim No. 055417824) is depicted below:



Physician's Signature _____ Date: 01/21/2025

337.    Similarly, prescriptions that were purportedly ordered by Amanze have identified two (2) photocopied, forged, or stamped signatures.

338.    In instances when Amanze purportedly prescribed a pneumatic compression device, the same signature has appeared on the order form.

339.    A true and accurate image of the undated DME prescription for the claimant Y.C. (Claim No. 0773929039) – which identifies McGee as the referring physician but is signed by Amanze – is depicted below:



340.    A true and accurate image of the December 5, 2024, DME prescription for the claimant A.L. (Claim No. 0776426835) – which identifies McGee as the referring physician but is signed by Amanze – is depicted below:



341.    A true and accurate image of the undated DME prescription for the claimant V.C. (Claim No. 0732916788) is depicted below:



342. Likewise, in instances when Amanze purportedly prescribed transcutaneous electrical stimulation devices, the same photocopied, forged, or stamped signature has been included on the order forms.

343. A true and accurate image of the October 31, 2024, DME prescription for the claimant Y.C. (Claim No. 0773929039) – which identifies McGee as the referring physician but is signed by Amanze – is depicted below:



344. A true and accurate image of the December 5, 2024, DME prescription for the claimant A.L. (Claim No. 0776426835) – which identifies McGee as the referring physician but is signed by Amanze – is depicted below:

345.    Prescriptions that were purportedly ordered by Leshchinskiy have identified two (2) photocopied, forged, or stamped signatures.

346.    In instances when Leshchinskiy purportedly prescribed a pneumatic compression device, the same signature has appeared on the order form.

347.    A true and accurate image of the undated DME prescription for the claimant R.A. (Claim No. 0755185090) is depicted below:



348.    A true and accurate image of the April 23, 2024, DME prescription for the claimant A.R. (Claim No. 0752565895) is depicted below:



349.    A true and accurate image of the October 1 2024, DME prescription for the claimant D.H. (Claim No. 0770595279) is depicted below:



350.     In instances when Leshchinskiy purportedly prescribed transcutaneous electrical stimulation devices, the same photocopied, forged, or stamped signature has appeared on the order form.

351.     A true and accurate image of the May 23, 2024, DME prescription for the claimant R.A. (Claim No. 0755185090) is depicted below:



352.     A true and accurate image of the April 23, 2024, DME prescription for the claimant A.R. (Claim No. 0752565895) is depicted below:



353.    A true and accurate image of the October 1 2024, DME prescription for the claimant D.H. (Claim No. 0770595279) is depicted below:



354.    Prescriptions that were purportedly ordered by Cummings have identified at least three (3) photocopied, forged, or stamped signatures.

355.    In instances when Cummings purportedly prescribed pneumatic compression devices or transcutaneous electrical stimulation devices, the same signature has appeared on the order form.

356.    True and accurate images of the July 15, 2024, DME prescriptions for the claimant T.N. (Claim No. 0762729853) are depicted below:



357. True and accurate images of the September 4, 2024, DME prescriptions for the claimant C.W. (Claim No. 0767487846) are depicted below:

358. True and accurate images of the September 5, 2024, DME prescriptions for the claimant D.J. (Claim No. 0767975295) are depicted below:



359.     In instances when Cummings purportedly prescribed osteogenesis stimulators and other DME items, the same photocopied, forged, or stamped signatures have been included on the order forms.

360.     A true and accurate image of the July 15, 2024, DME prescriptions for the claimant T.N. (Claim No. 0762729853) is depicted below:



361.     A true and accurate image of the September 4, 2024, DME prescription for the claimant C.W. (Claim No. 0767487846) is depicted below:



362.    A true and accurate image of the December 17, 2024, DME prescription for the claimant D.D. (Claim No. 0778456616) is depicted below:



363.    A true and accurate image of the January 7, 2025, DME prescription for the claimant D.B. (Claim No. 0780055471) is depicted below:



364.    A true and accurate image of the January 28, 2025, DME prescription for the claimant C.H. (Claim No. 0782577886) is depicted below:



365. Lastly, prescriptions that were purportedly ordered by White have identified the same photocopied, forged, or stamped signatures.

366. A true and accurate image of the September 20, 2024, DME prescription for the claimant E.A. (Claim No. 0765986823) is depicted below:



367. A true and accurate image of the November 20, 2024, DME prescription for the claimant J.B. (Claim No. 0776967275) is depicted below:



368. At all times relevant, the Defendants falsely represented that DME was provided to Allstate claimants pursuant to valid prescriptions from healthcare providers for medically necessary DME, and that they were therefore eligible to collect No-Fault benefits.

369. As evidenced by the documentation that has been submitted to Allstate – including the orders that contain photocopied, forged, or stamped signatures – the prescriptions from the Referring Providers at Beach Medical Rehabilitation and South Bronx Medical Rehabilitation were issued pursuant to predetermined treatment protocols for DME that was medically unnecessary and excessive.

370.    Virtually every patient that treated at Beach Medical Rehabilitation and South Bronx Medical Rehabilitation was provided with an initial examination that ultimately concluded with the Referring Provider prescribing multiple DME items.

371.    The medical records that have been submitted to Allstate indicate that the DME items were not specifically ordered to address each patients' symptoms.

372.    Rather, regardless of the nature of the alleged motor vehicle accident, the patient's age, the patient's physical condition, the patient's subjective complaints, and the patient's prior medical history, multiple DME items would be prescribed by the Referring Provider.

373.    In furtherance of this scheme, the prescription would then be divided by the DME Entity Defendants, therefore allowing the Defendants to submit separate bills to Allstate that not only reduced the amount charged to Allstate, but also concealed the nature of their fraudulent scheme.

374.    In keeping with the fact that the prescriptions for DME were not medically necessary and were prescribed pursuant to predetermined treatment protocols, the contemporaneous reports issued by the Referring Providers did not reference the prescribed DME items nor detailed the reasoning for the prescription or how the prescribed DME items would benefit the patient.

375.    In the same manner, the Referring Providers did not reference or discuss the previously prescribed DME items in their follow-up examination reports.

376.    The prescriptions for DME issued by the Referring Providers were not designed to aid their patients, but were instead ordered to enrich the Defendants.

377.     As the DME items were prescribed pursuant to predetermined treatment protocols in connection with unlawful financial arrangements, the Defendants, at all times relevant, were never eligible to collect No-Fault benefits.

**F.     THE IMPROPER DISTRIBUTION OF FRAUDULENT EQUIPMENT TO ALLSTATE CLAIMANTS BY THE ENTITY DEFENDANTS WITHOUT VALID PRESCRIPTIONS**

378.     As an initial matter, in order for a prescription to be valid, it must be actually issued by a licensed healthcare provider who has determined that such a prescription is medically necessary.

379.     In connection with this scheme, however, many of the prescriptions for the fraudulent DME that were purportedly issued by the Referring Providers were not valid prescriptions as they routinely (i) contained a photocopied, stamped, or forged signature of the Referring Provider, and (ii) were not referred or explained in any contemporaneous medical record.

380.     In specific instances, the purported prescriptions were undated and/or were issued on dates that the Referring Provider did not examine nor treat the Allstate claimant.

381.     For example, the patient, Y.C. (Claim No. 0773929039), purportedly treated at Beach Medical Rehabilitation on two (2) dates of service, where in an initial evaluation was allegedly performed on October 31, 2024 followed by a re-evaluation on February 13, 2025.

382.     On both dates of service, Y.C. was purportedly treated by Amanze. Although Y.C. was purportedly provided with a referral for a pneumatic compression device, the referral was not dated and identified the referring physician as "John McGee", despite containing Amanze's signature.

383.     A true and accurate image of undated referral form is depicted below.

Physician Name: ___ McGee
Physician's Address: 2088 Flatb... City: Brooklyn State: NY Zip: 1123...
Tel: 718-975-812... Fax: ___

Patient: ___ C___ Home Tel: ___
Address: ___ City: ___ State: ___ Zip: ___

☑ Pneumatic compression device

☐ Wearable PEMF Device

DIAGNOSIS:

ICD-10___ ICD-10___
ICD-10___ ICD-10___
ICD-10___ ICD-10___

Insurance Type: W/C N/F LIEN SELFPAY PVT
Primary Insurance Carrier___
Claim#: ___
Policy#: ___
Name of Attorney: ___
Tel: ___ Fax: ___
Policy Holder: ___
Date of Accident: ___

I confirm the order for the above-named patient. I also certify that the prescribed treatment is medically reasonable and necessary in the reference to accepted standards of medical practice within the community for treatment of this patient's condition.

Physician's Signature ___ Date: ___

384. Notably, the pneumatic compression device allegedly prescribed by McGee but signed for and certified by Amanze was purportedly delivered to Y.C. by Nexgen Line, which purportedly had Y.C. execute an Assignment of Benefits form bearing Nexgen Line's name.

385. The corresponding medical bill, however, was subsequently submitted to Allstate under Platinum Line's name and TIN number.

386. In addition, the DME Owner Defendants are not licensed healthcare providers, and are therefore not licensed to, nor permitted to, prescribe DME to patients.

387.    As such, the Defendants were not lawfully permitted to prescribe or otherwise determine what DME item(s) was medically necessary for each Allstate claimant.

388.    For the same reason, the DME Entity Defendants are unable to properly dispense DME items to an Allstate claimant without a valid prescription from a licensed healthcare provider that definitively identifies the medical necessity of the DME item(s) to be provided.

389.    Despite these requirements, as part of the fraudulent scheme, the Defendants improperly selected which DME items (e.g., pneumatic compression devices) to provide to Allstate claimants without a valid prescription from a licensed healthcare provider, to the extent that the item was actually provided to the Allstate claimant.

390.    Moreover, the prescriptions purportedly issued by the Referring Physicians did not definitively identify the type of DME to be dispensed.

391.    For example, these prescriptions did not provide specific HCPCS codes nor sufficient product details that would direct the Defendants to the unique type of DME item to be provided to patients.

392.    In addition to failing to provide a specific type of DME item to be dispensed, the Defendants did not obtain any additional documentation from the Referring Providers that approved or otherwise acknowledged the specific type of DME item – either by HCPCS code or product description – was medically necessary for each patient.

393.    As such, the vague and generic prescriptions that were purportedly issued by the Referring Providers were intended to provide the Defendants with the ability to select which fraudulent DME items were to be dispensed based on their varying rate of reimbursement.

394.    In a legitimate clinical setting, a DME supplier that received a prescription that did not contain a HCPCS code or sufficient product description to identify a specific DME item would

contact the referring physician to request clarification on the specific item that was being requested, including the features and requirements to dispense the appropriate DME item prescribed to each patient.

395. Moreover, the DME supplier would request that the referring healthcare provider sign documentation to confirm that the specific DME item – identified by HCPCS code or detailed product description – was medically necessary for the patient.

396. The medical documentation that has been submitted to Allstate, however, indicates that the Defendants never sought instruction nor clarification from the Referring Providers.

397. Rather, these records indicate that the Defendants made their own determination with regard to each DME item, ultimately selecting DME items with higher reimbursement rates.

### E.    THE FRAUDULENT BILLING SUBMITTED BY THE DEFENDANTS

398. To support their fraudulent charges, the Defendants systematically submitted, or caused to be submitted, hundreds of NF-3 forms to Allstate through and in the names of the DME Entity Defendants, seeking reimbursement for the fraudulent DME.

399. The NF-3 forms, prescriptions, and delivery receipts that the Defendants submitted, or caused to be submitted, were false and misleading, as they uniformly misrepresented to Allstate that the Defendants provided DME pursuant to prescriptions by licensed healthcare providers, which was reasonable and medically necessary, and were therefore entitled to receive No-Fault benefits.

400. However, at all times relevant, the Defendants were ineligible to receive No-Fault benefits, as the DME that was purportedly dispensed by the DME Entity Defendants was (1) provided to Allstate Claimants even though the DME Entity Defendants were not lawfully licensed; (2) provided pursuant to unlawful referral and financial arrangements, (3) excessive and

medically unnecessary, (4) rendered as part of a predetermined treatment protocol, and/or (5) provided for the sole purpose of maximizing the DME Owner Defendants' profits rather than improving the condition of each patient.

## VI.   SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

401.   The Defendants created, prepared, and submitted (or caused to be created, prepared, and submitted) false medical documentation and intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing, or causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing, or attempting, such fraudulent schemes.

402.   Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, referrals, prescriptions, letters of medical necessity, delivery receipts, and NF-3's in connection with the insurance claims reference throughout this pleading traveled through the U.S. Mail.

403.   Every insurance claim detailed within, involved at least two uses of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

404.   The Defendants used the U.S. Mail to further their fraudulent scheme and conduct the affairs of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises; they caused prescriptions, letters of medical necessity, delivery receipts, medical

records, and NF-3 bills from the DME Entity Defendants to be mailed to Allstate and/or counsel for claimants, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

405. The Defendants and/or persons working under their direction or control caused the DME Entity Defendants to falsely certify that they were, in all respects, eligible to collect No-Fault payments each time that they mailed a demand for payment (i.e., NF-3 bill or other invoice) to Allstate.

406. The Defendants committed mail fraud because they used the U.S. Mail to submit No-Fault claims even though the DME Entity Defendants were not entitled to No-Fault payments.

407. At all relevant times, the Defendants knew that claimants, insurance carriers, claimants' attorneys, other medical providers, and/or Allstate would use the U.S. Mail in connection with each of the DME Entity Defendants' fraudulent No-Fault claims, including issuing payments in reliance on the documents mailed by the DME Entity Defendants support of the claims.

408. Allstate estimates that the Defendants' scheme generated hundreds of mailings. A representative sampling of mailings made in furtherance of the Beach Medical Rehabilitation and South Bronx Medical Rehabilitation enterprises are listed in the chart annexed at Exhibit 1 and incorporated herein by reference as if set forth in its entirety.

## VII. SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

409. The DME Entity Defendants falsely represented that they possessed the requisite DCWP license each time they submitted a claim to Allstate.

410. Each letter of medical necessity submitted by the DME Entity Defendants falsely attested to the medical necessity of the DME devices.

411. At all times relevant during the operation of the DME Entity Defendants, to induce Allstate to pay promptly charges for DME purportedly provided to claimants by the DME Entity Defendants, the Defendants caused the DME Entity Defendants to falsely certify that they were, in all respects, eligible to be reimbursed under New York's No-Fault laws.

412. The Defendants concealed facts regarding the licensure of the DME Entity Defendants, which prevented Allstate from discovering that the DME Entity Defendants were ineligible for No-Fault payments.

413. The Defendants also misrepresented material facts concerning the medical necessity of the PCDs, TEJSDs, and osteogenesis stimulators.

414. The truth about the DME Entity Defendants licensure is not readily evident within the four corners of the documents submitted to Allstate by the Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim at issue in this matter.

415. Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services or products that were provided in accordance with all applicable New York state licensing requirements.

416. Thus, every time the Defendants (along with those individuals working under their control) caused the DME Entity Defendants to submit No-Fault claims to Allstate, the Defendants (and those individuals working under their control) necessarily certified that the DME Entity Defendants were, in all respects, eligible to be reimbursed under New York's No-Fault laws.

417. The Defendants submitted numerous documents in furtherance of its efforts to conceal their fraud, including prescriptions, letters of medical necessity, delivery receipts, and NF-3's.

418.    The full extent of the Defendants' misconduct was not, and could not have been, known to Allstate until it commenced this action.

## VIII.    **ALLSTATE'S JUSTIFIABLE RELIANCE**

419.    Each claim submitted to Allstate by (or on behalf of) the Defendants was verified pursuant to Insurance Law § 403.

420.    To induce Allstate to promptly pay the DME Entity Defendants, the Defendants submitted NF-3 forms certifying that BSD OS, TM OS, Luminex BK, Harmony OS, Vital Craft OS, Pinnacle OS, Wellspring Solutions, Nexgen Line, and Platinum Line were eligible to be reimbursed.

421.    Further, to induce Allstate to promptly pay the fraudulent charges for DME purportedly provided to Allstate claimants, the Defendants hired attorneys and law firms to pursue collection of the fraudulent charges from Allstate. These attorneys and law firms routinely file time-consuming and expensive lawsuits and arbitration matters against Allstate in the event that the DME Entity Defendants charges are not promptly paid in full.

422.    Allstate is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days. The facially valid documents submitted to Allstate by the Defendants in support of the fraudulent charges, combined with the material misrepresentations described above, were designed to, and did, cause Allstate to justifiably rely on them.

423.    The Defendants concealed from Allstate the truth regarding the DME Entity Defendants' reimbursement eligibility.

424.    In reasonable reliance on these misrepresentations, Allstate paid money to the DME Entity Defendants to its detriment.

425.    Allstate would not have paid these monies had the Defendants provided true and

accurate information about the DME Entity Defendants' reimbursement eligibility, including billing for (i) DME that was dispensed by an unlicensed entity; (ii) DME that was dispensed based upon forged and/or altered prescriptions; (iii) DME that was dispensed pursuant to an unlawful referral and illegal kickback scheme; (iv) DME items that were not medically necessary; and (v) services that failed to comply with state and local licensure laws.

426. As a result, Allstate was caused to make No-Fault payments totaling over $679,663.38 to the DME Entity Defendants. *See* Exhibits 2-10.

427. Allstate made payments to the Defendants in reasonable reliance on the documents and representations submitted by the Defendants in support of their No-Fault claims, including the (false) warranties that the DME Entity Defendants were eligible for payment under New York's No-Fault laws.

## IX. <u>DAMAGES</u>

428. The Defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

a. Payments made to BSD OS LLC in excess of $225,625.46, the exact amount to be determined at trial. The chart annexed at Exhibit 2, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to BSD OS LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

b. Payments made to TM OS LLC in excess of $40,167.25, the exact amount to be determined at trial. The chart annexed at Exhibit 3, and incorporated herein as if set forth in its

entirety, identifies Allstate's payments to TM OS LLC. in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

c.     Payments made to Luminex BK LLC in excess of $83,369.70, the exact amount to be determined at trial. The chart annexed at Exhibit 4, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Luminex BK LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

d.     Payments made to Harmony OS LLC in excess of $26,515.37, the exact amount to be determined at trial. The chart annexed at Exhibit 5, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Harmony OS LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

e.     Payments made to Vital Craft OS LLC in excess of $63,443.71, the exact amount to be determined at trial. The chart annexed at Exhibit 6, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Vital Craft OS LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

f.     Payments made to Pinnacle OS LLC in excess of $73,105.60, the exact amount to be determined at trial. The chart annexed at Exhibit 7, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Pinnacle OS LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

g.     Payments made to Wellspring Solutions LLC in excess of $96,583.61, the exact amount to be determined at trial. The chart annexed at Exhibit 8, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Wellspring Solutions LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

h.      Payments made to Nexgen Line Inc. in excess of $34,274.62, the exact amount to be determined at trial. The chart annexed at Exhibit 9, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Nexgen Line Inc. in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

i.      Payments made to Platinum Line Inc. in excess of $36,578.06, the exact amount to be determined at trial. The chart annexed at Exhibit 10, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Platinum Line Inc. in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

## X.      CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BEACH MEDICAL REHABILITATION P.C. ENTERPRISE
### (Against TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)

429.      Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

430.      In furtherance of their operation and management of Beach Medical Rehabilitation P.C. ("Beach Medical Rehabilitation"), the Defendants, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev (collectively, "Count I Defendants"), intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

431.     The Count I Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

432.     Among other things, NF-3 forms, prescriptions, letters of medical necessity, delivery receipts, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

433.     Policies of insurance were delivered to insureds through the U.S. Mail.

434.     Payments made by Allstate to the DME Entity Defendants were delivered through the U.S. Mail.

435.     As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms to Allstate related to services that were purportedly performed by the DME Entity Defendants for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

436.     As a result of, and in reasonable reliance upon, the mailing of these materially false representations, Allstate, by its agents and employees, issued drafts to the DME Entity Defendants, for the benefit of one or more of the Count I Defendants, that would not otherwise have been paid.

437.     The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count I Defendants to continue without being detected.

438.     The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

439.  By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

440.  The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to the DME Entity Defendants for the benefit of the Count I Defendants.

441.  Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

442.  Beach Medical Rehabilitation constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

443.  The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Beach Medical Rehabilitation enterprise through a pattern of racketeering activities.

444.  Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

445.  The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

446.  By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## VIOLATIONS OF 18 U.S.C. § 1962(d)
## BEACH MEDICAL REHABILITATION P.C. ENTERPRISE
**(Against TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

447. Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

448. Throughout their participation in the operation and management of Beach Medical Rehabilitation P.C. ("Beach Medical Rehabilitation"), the Defendants, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev (collectively, "Count II Defendants"), conspired with each other to violate 18 U.S.C. § 1962(c).

449. The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Beach Medical Rehabilitation by means of a pattern of racketeering activity, namely using the U.S. Mail to send fraudulent NF-3 bills and other claim-related documents to Allstate in connection with No-Fault claims, including, without limitation, the numerous instances of mail fraud set forth in Exhibit 1.

450. The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of the DME Entity Defendants, even though the DME Entity Defendants, as a result of the Count II Defendants' unlawful conduct, were not eligible to collect such No-Fault benefit payments. The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations.

451.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault payments as a result of the Count II Defendants' unlawful conduct described herein.

452.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count II Defendants three times the damages sustained by reason of the claims submitted by the DME Entity Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### SOUTH BRONX MEDICAL REHABILITATION P.C. ENTERPRISE
### (Against BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)

453.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

454.     In furtherance of their operation and management of South Bronx Medical Rehabilitation P.C. ("South Bronx Medical Rehabilitation"), the Defendants,  BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev (collectively, "Count III Defendants"), intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

455.     The Count III Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

456.     Among other things, NF-3 forms, prescriptions, letters of medical necessity, delivery receipts, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

457.     Policies of insurance were delivered to insureds through the U.S. Mail.

458.     Payments made by Allstate to the DME Entity Defendants were delivered through the U.S. Mail.

459.     As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms to Allstate related to services that were purportedly performed by the DME Entity Defendants for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

460.     As a result of, and in reasonable reliance upon, the mailing and/or submission of these materially false representations, Allstate, by its agents and employees, issued drafts to the DME Entity Defendants, for the benefit of one or more of the Count III Defendants, that would not otherwise have been paid.

461.     The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count III Defendants to continue without being detected.

462.     The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

463.     By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents in an ongoing scheme, the Count III

Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

464.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to the DME Entity Defendants for the benefit of the Count III Defendants.

465.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

466.    South Bronx Medical Rehabilitation constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

467.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the South Bronx Medical Rehabilitation enterprise through a pattern of racketeering activities.

468.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

469.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

470.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**SOUTH BRONX MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

471. Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

472. Throughout their participation in the operation and management of South Bronx Medical Rehabilitation P.C. ("South Bronx Medical Rehabilitation"), the Defendants, BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev (collectively, "Count IV Defendants"), conspired with each other to violate 18 U.S.C. § 1962(c).

473. The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of South Bronx Medical Rehabilitation by means of a pattern of racketeering activity, namely using the U.S. Mail to send fraudulent NF-3 bills and other claim-related documents to Allstate in connection with No-Fault claims, including, without limitation, the numerous instances of mail fraud set forth in Exhibit 1.

474. The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of the DME Entity Defendants, even though the DME Entity Defendants, as a result of the Count IV Defendants' unlawful conduct, were not eligible to collect such No-Fault benefit payments. The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

475.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault payments as a result of the Count IV Defendants' unlawful conduct described herein.

476.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count IV Defendants three times the damages sustained by reason of the claims submitted by the DME Entity Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
## COMMON LAW FRAUD
**(Against All Defendants)**

477.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

478.     The Defendants, BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev (collectively, "Count V Defendants"), conspired to defraud Allstate by billing for fraudulent DME that was dispensed pursuant to unlawful referrals through BSD OS, Luminex BK, TM OS, Vital Craft OS, Harmony OS, Pinnacle OS, Wellspring Solutions, Nexgen Line, and Platinum Line.

479.     The Count V Defendants' scheme to defraud Allstate was dependent upon a succession of material misrepresentations of fact that the DME Entity Defendants were entitled to receive No-Fault reimbursement under New York law.

480.    The Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

481.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (a) in every claim, the representation that BSD OS, Luminex BK, TM OS, Vital Craft OS, Harmony OS, Pinnacle OS, Wellspring Solutions, Nexgen Line, and Platinum Line were properly licensed and therefore eligible to seek and collect No-Fault benefit payments under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) even though the Count V Defendants were (a) not properly licensed by the DCWP, and (b) in every claim, the representation that the Count V Defendants were eligible to seek and collect No-Fault benefit payments directly from Allstate under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) for the durable medical equipment purportedly provided to Allstate claimants when, in fact, the Count V Defendants were not eligible to seek or collect No-Fault benefit payments for these services because they were medically unnecessary.

482.    The Defendants intentionally made the above-described false and fraudulent statements, and purposely concealed material facts for the purpose of inducing Allstate to pay charges submitted by (or on behalf of) the Count V Defendants.

483.    Allstate reasonably relied, to its detriment, upon the Defendants' material misrepresentations concerning the Count V Defendants.

484.    Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault payments to the Count V Defendants

totaling in excess of $679,663.38 in connection with No-Fault claims determined to be fraudulent as of the filing of this action.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

485. Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

486. As detailed above, the Defendants have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of Allstate.

487. The Count VI Defendants have each been enriched at Allstate's expense through their receipt of payments made by Allstate in connection with No-Fault benefit claims submitted by (or on behalf of) the DME Entity Defendants.

488. The payments received by the Defendants constituted a benefit that they willingly and voluntarily accepted despite their commission of improper, unlawful, and unjust acts in furtherance of this scheme. The Defendants' retention of Allstate's payments violates fundamental principles of justice, equity and good conscience.

489. By reason of the improper, unlawful, and unjust conduct described throughout this Complaint, the Defendants have been unjustly enriched in an amount totaling in excess of $679,663.38, the exact amount to be determined at trial.

**COUNT VII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against BSD OS LLC, Luminex BK LLC, TM OS LLC, Vital Craft OS LLC,**
**Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC,**
**Nexgen Line Inc., and Platinum Line Inc.)**

490. Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1 through 428 as if set forth fully herein.

491. Medical providers must adhere to all applicable New York statutes which grant the authority to provide medical services in New York to be eligible to collect assigned No-Fault benefits.

492. In view of their billing for the unlicensed dispensing of durable medical equipment that was not medically necessary, the DME Entity Defendants have, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus have no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to the DME Entity Defendants by its patients.

493. The DME Entity Defendants continue to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

494. The DME Entity Defendants continue to challenge Allstate's prior claim denials.

495. The DME Entity Defendants continue to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

496. A justifiable controversy exists between Allstate and the DME Entity Defendants because the DME Entity Defendants reject Allstate's ability to deny such claims.

497. Allstate has no adequate remedy at law.

498. The DME Entity Defendants will also continue collecting No-Fault payments from Allstate absent a declaration by this Court that their activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by the DME Entity Defendants.

499. Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that the DME Entity Defendants, at all relevant times, were (a) unlicensed and (b) unlawfully billing for unnecessary and medically useless DME and thus has no standing to collect payment on any assigned No-Fault claim.

## XI. DEMAND FOR RELIEF

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**BEACH MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT II**
**VIOLATION 18 U.S.C. § 1962(d)**
**BEACH MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik, Pinnacle OS LLC, Joseph J. Scala, Wellspring Solutions LLC, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**SOUTH BRONX MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

**COUNT IV**
**VIOLATION 18 U.S.C. § 1962(d)**
**SOUTH BRONX MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against BSD OS LLC, Luminex BK LLC, Yitzhak Rahman, TM OS LLC, Vital Craft OS LLC, Mark Pelta, Harmony OS LLC, Abraham Radzik,, Nexgen Line Inc., Giora Bennissim (a.k.a. "Adam Bennissim"), Platinum Line Inc., and Igor Abayev)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

**COUNT V**
**COMMON-LAW FRAUD**
**(Against All Defendants)**

(a)   AWARD Allstate its actual damages in an amount to be determined at trial;

(b)   AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of Defendants' illegal conduct;

(c)     AWARD Allstate its costs in defending collection lawsuits and arbitrations filed by BSD OS LLC, Luminex BK LLC, TM OS LLC, Vital Craft OS LLC, Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC, Nexgen Line Inc., and Platinum Line Inc., seeking to collect payment in connection with false and fraudulent No-Fault claims; and

(d)     GRANT any other relief this Court deems just.

## COUNT VI
## UNJUST ENRICHMENT
### (Against All Defendants)

(a)     AWARD Allstate's actual and consequential damages to be determined at trial;

(b)     GRANT any other relief this Court deems just.

## COUNT VII
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against BSD OS LLC, Luminex BK LLC, TM OS LLC, Vital Craft OS LLC, Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC, Nexgen Line Inc., and Platinum Line Inc.)

(a)     DECLARE that BSD OS LLC, Luminex BK LLC, TM OS LLC, Vital Craft OS LLC, Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC, Nexgen Line Inc., and Platinum Line Inc., at all relevant times, have been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for healthcare services in New York;

(b)     DECLARE that BSD OS LLC, Luminex BK LLC, TM OS LLC, Vital Craft OS LLC, Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC, Nexgen Line Inc., and Platinum Line Inc.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by BSD OS LLC, Luminex BK LLC, TM OS LLC,

Vital Craft OS LLC, Harmony OS LLC, Pinnacle OS LLC, Wellspring Solutions LLC, Nexgen Line Inc., and Platinum Line Inc.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## XII.   **JURY TRIAL DEMAND**

The Plaintiffs demand a trial by jury on all claims.

KING, TILDEN, McETTRICK, & BRINK, P.C.

*/s/ Shauna L. Sullivan*

_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Shauna L. Sullivan (SS5624)
ssullivan@ktmpc.com
Hugh C. M. Brady (HB4724)
hbrady@ktmpc.com
350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214 (office)

Attorneys for the Plaintiffs,
*Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company*

Dated: October 28, 2025